UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIDEWATER HOLDINGS, INC., et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>WESTCHESTER FIRE INSURANCE COMPANY,<br><br>      Defendant. | CASE NO. C18-6006 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Westchester Fire Insurance Company's ("Westchester") motion to dismiss. Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 18, 2018, Plaintiffs Tidewater Barge Lines, Inc., Tidewater Environmental Services, Inc., and Tidewater Holdings, Inc. ( collectively "Tidewater") filed a complaint against Westchester asserting claims for breach of contract and declaratory judgment. Dkt. 1.

On February 22, 2019, Westchester filed a motion to dismiss. Dkt. 12. On March 18, 2019, Tidewater responded. Dkt. 13. On March 22, 2019, Westchester replied. Dkt. 16.

## II.  FACTUAL BACKGROUND

Almost all of the facts in this matter are undisputed, and the parties' dispute essentially boils down to the interpretation of their insurance contract. Westchester issued Tidewater a corporate indemnity package effective October 1, 2017, through October 1, 2018. Dkt. 14, Ex. A ("Policy"). Tidewater cites three relevant coverage provisions: (1) computer fraud coverage, (2) claim investigation expense coverage, and (3) supplemental funds transfer coverage. First, the computer fraud coverage provision provides as follows:

> The Insurer will pay for loss of or damage to Money, Securities and Other Property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the Premises or Banking Premises:
> a)  To a person (other than a Messenger) outside those Premises; or
> b)  To a place outside those Premises.

*Id.* at 19 (emphasis omitted) (ECF pagination).

Second, the claims investigation coverage provision provides as follows:

> The Insurer will pay the reasonable and necessary costs, fees or other expenses incurred in excess of the deductible amount of $5,000 and paid by the Company to an independent accounting, auditing or other service used to determine the amount of loss occurring from a valid and covered claim ("Claims Expense"). Provided, however, any such payment shall only be made after the settlement of all covered loss and only if such covered loss is in excess of the deductible of the Insuring Clause where coverage is afforded under this Policy.
> The Insurer's maximum liability for all such Claims Expenses shall be $25,000 ("Claims Expense Limit"). The Claims Expense Limit shall be

part of and not in addition to the applicable Limit of Liability otherwise stated in Item C of the Declarations, and will in no way serve to increase the Insurer's Limit of Liability as therein provided.

*Id.* at 75 (emphasis omitted).

The supplemental funds transfer coverage provision provides as follows:

> The Insurer will pay for loss resulting directly from the Company having transferred, paid or delivered any Money or Securities as the direct result of a Fraudulent Transfer Request committed by a person purporting to be an Employee, customer, client, or vendor.
> . . .
> Fraudulent Transfer Request means the intentional misleading of an Employee, through a misrepresentation of a material fact which is relied upon by an Employee, sent via an email, text, instant message, social media related communication, or any other electronic telegraphic, cable, teletype, telefacsimile, telephone or written instruction, regardless of whether such misrepresentation is part of a phishing, spearphishing, social engineering, pretexting, diversion, or other confidence scheme.

*Id.* at 97 (emphasis omitted). The endorsement provides a policy limit of $150,000 and $25,000 deductible. *Id*. This endorsement also provides a purported amendment to the exclusion portion of the general policy. The amendment provides as follows:

> Section C, EXCLUSIONS, is amended as follows:
> . . .
> b) With respect to all Insuring Clauses other than the Supplemental Funds Transfer Insuring Clause, the Insurer shall not be liable for any loss resulting from any Fraudulent Transfer Request.
> All other terms and conditions of this Policy remain unchanged.

*Id.* at 98 (emphasis omitted).

On November 16, 2017, a Tidewater accounts payable clerk received a computer generated external email from an impostor instructing the clerk to alter the payment details Tidewater held on file for JH Kelly, a general contractor for Tidewater. Dkt. 1, ¶¶ 4.1, 4.2. In response to the email, Tidewater's clerk changed the payment details for JH

Kelly in Tidewater's computer system. *Id.* ¶ 4.2. This resulted in four subsequent payments to the imposter's bank account instead of JH Kelly's account totaling $568,448.92. *Id.* ¶ 4.3.

On January 16, 2018, Tidewater engaged KPMG, a consulting firm, to assist in the investigation. Tidewater was invoiced $27,879.48 for the cost of KPMG's investigation. *Id.* ¶ 4.6. As a result of the investigation, Tidewater was able to recover $288,388.91 of the fraudulently diverted funds. *Id.* ¶ 4.7. Overall, Tidewater lost $280,060.01 and incurred the costs of the investigation. *Id.*

Tidewater timely submitted a claim to Westchester. After its investigation, Westchester offered to provide coverage under the supplemental funds transfer coverage provision and stated that it would reimburse $25,000, minus the applicable deductible, for the costs of KPMG's investigation. *Id.* ¶ 4.9. Tidewater alleges that this effectively resulted in a denial of coverage under the computer fraud coverage provision. *Id.* Tidewater alleges that it rejected Westchester's check and assignment and sought coverage under the computer fraud provision. *Id.* ¶¶ 4.10, 4.11. The parties were unable to resolve the dispute and this action followed.

## III. DISCUSSION

**A.      Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the

Kelly in Tidewater's computer system. *Id.* ¶ 4.2. This resulted in four subsequent payments to the imposter's bank account instead of JH Kelly's account totaling $568,448.92. *Id.* ¶ 4.3.

On January 16, 2018, Tidewater engaged KPMG, a consulting firm, to assist in the investigation. Tidewater was invoiced $27,879.48 for the cost of KPMG's investigation. *Id.* ¶ 4.6. As a result of the investigation, Tidewater was able to recover $288,388.91 of the fraudulently diverted funds. *Id.* ¶ 4.7. Overall, Tidewater lost $280,060.01 and incurred the costs of the investigation. *Id.*

Tidewater timely submitted a claim to Westchester. After its investigation, Westchester offered to provide coverage under the supplemental funds transfer coverage provision and stated that it would reimburse $25,000, minus the applicable deductible, for the costs of KPMG's investigation. *Id.* ¶ 4.9. Tidewater alleges that this effectively resulted in a denial of coverage under the computer fraud coverage provision. *Id.* Tidewater alleges that it rejected Westchester's check and assignment and sought coverage under the computer fraud provision. *Id.* ¶¶ 4.10, 4.11. The parties were unable to resolve the dispute and this action followed.

## III.   DISCUSSION

**A.      Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the

complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**B.      Westchester's Motion**

As a threshold matter, the Court must address Westchester's arguments that two authorities stand for extremely broad propositions. First, Westchester argues that in *Taylor & Lieberman v. Fed. Ins. Co.*, 681 Fed. Appx. 627 (9th Cir. 2017) ("*Taylor*"), the Ninth Circuit held "that fraudulently induced wire transfer is not a computer fraud covered under a commercial crime policy." Dkt. 16 at 1–2. Going even further, Westchester argues that *Taylor* held "that the insuring clause at issue in this case does not cover wire transfers induced by deceptive email." *Id.* at 3. Westchester provides no authority for either the sweeping proposition that *Taylor* controls all wire transfers under all commercial crime policies or the more specific proposition that *Taylor* absolutely controls the outcome of this dispute. In fact, neither *Taylor* nor the district court opinion the *Taylor* panel reviewed, *Taylor & Lieberman v. Fed. Ins. Co.*, CV 14-3608-RSWL-SHX, 2015 WL 3824130 (C.D. Cal. June 18, 2015), provides the complete language of the computer fraud coverage provision at issue in that matter. Instead, the district court granted summary judgment to the insurer concluding that the insured had failed to establish a "direct loss" as required by the policy. *Id.* at *4. The Ninth Circuit

"affirm[ed] on other grounds" and rejected the insured's argument that the outside emails "constituted an unauthorized (1) 'entry into' its computer system, and (2) 'introduction of instructions' that 'propogate[d] themselves' through its computer system." *Taylor*, 681 Fed. Appx. at 629. Based on these authorities, it seems that the policy at issue there required a "direct loss" based on an unauthorized "entry into" the insured's computer system and an "introduction of instruction" that "propagate themselves" through that computer system. If true, such a policy would stand in stark contrast to the one at issue here that provides coverage "for loss of or damage to Money, Securities and Other Property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the Premises or Banking Premises" to another person or premises. Dkt. 14 at 19. Thus, the Court rejects Westchester's argument that *Taylor* controls the outcome of this dispute and finds that *Taylor* is hardly even persuasive as to the interpretation of the parties' policy.

Second, Westchester argues that *Aqua Star (USA) Corp. v. Travelers Cas. & Sur. Co. of Am.*, C14-1368RSL, 2016 WL 3655265 (W.D. Wash. July 8, 2016), *aff'd*, 719 Fed. App'x 701 (9th Cir. 2018), "upholds Westchester's right to exclude social engineering claims from the Computer Fraud insuring clause." Dkt. 16 at 2. In *Aqua*, the insured's employees received an email from an imposter directing them to alter the payment account for a business partner. *Id.* at *1. On summary judgment, the Court assumed that the policy in question covered the employees' conduct and considered an applicable exclusion. *Id.* at *2. Specifically, the Court stated that "[e]xclusion G provides that the Policy 'will not apply to loss resulting directly or indirectly from the

input of Electronic Data by a natural person having the authority to enter the Insured's Computer System' unless covered under insuring agreements not applicable here." *Id.* In contrast, Westchester has relied upon its exclusion that provides as follows: "[w]ith respect to all Insuring Clauses other than the Supplemental Funds Transfer Insuring Clause, the Insurer shall not be liable for any loss resulting from any Fraudulent Transfer Request," which is further defined in a separate portion of the Policy. Dkt. 14 at 98. Similar to *Taylor*, Westchester fails to establish that an interpretation of the policy in *Aqua* is relevant to or even persuasive in the question of the interpretation of the Policy in this matter. Thus, the Court rejects Westchester's arguments regarding the applicability of *Aqua*.

Although the Court rejects Westchester's main authorities, the Court agrees with Westchester that the instant motion involves interpretation of the Policy. Insurance policies are construed as contracts under Washington law. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665 (2000), *as amended* (Jan. 16, 2001). The policy is to be construed as a whole and given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. (internal quotation marks omitted). In the case of clear and unambiguous policy language, "the court must enforce it as written and may not modify it or create ambiguity where none exists." *Id*. (internal quotation marks omitted). A clause is ambiguous if it is "fairly susceptible to two different interpretations, both of which are reasonable." *Id*. (internal quotation marks omitted). When determining coverage, the initial burden of proof is on the insured to show that a loss falls within the terms of the

policy. *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 271 (2004). The burden then shifts to the insurer to prove that the loss is not covered because of exclusionary provisions within the policy. *Id.*

Turning to the Policy, the Court will assume for the purposes of this motion that Tidewater's loss is covered by both the computer crime provision and the supplemental funds transfer provision because the cited exclusion is dispositive. The exclusion provides as follows:

> Section C, EXCLUSIONS, is amended as follows:
> . . .
> b) With respect to all Insuring Clauses other than the Supplemental Funds Transfer Insuring Clause, the Insurer shall not be liable for any loss resulting from any Fraudulent Transfer Request.

Dkt. 14 at 98 (emphasis omitted). Tidewater argues that this exclusion is ambiguous because it "creates a confusing inconsistency with the other exclusions in the crime coverage section." Dkt. 13 at 14–17. Tidewater states that the original exclusions in the main policy are subdivided such that the specific exclusion references which portion of the Policy it limits. For example, the exclusions listed in section C.1 limit all the insuring clauses whereas the exclusions in section C.2 only limit the insuring provisions in section A.1. Dkt. 14 at 24–25. Tidewater argues that "[w]ithout such a specific reference, the reader is left guessing whether an exclusion in the [supplemental funds transfer coverage] endorsement applies to every insuring agreement, a select few, or only the insuring agreement of the endorsement itself." Dkt. 13 at 15. The Court finds that this is an unreasonable interpretation of the exclusion because the opening phrase states that "[w]ith respect to *all Insuring Clauses* other than the Supplemental Funds Transfer

Insuring Clause . . . ." Dkt. 14 at 98. The fair, reasonable, and sensible reading of the language conveys the idea that it applies to every clause that provides coverage. There is no other reasonable meaning other than a contract wide application of the exclusion. Thus, the exclusion is unambiguous.

Furthermore, every case Tidewater cites in support of its position as to this exclusion involves an actual ambiguity of *language* in the policy as opposed to numbering and organization of the exclusions. *See* Dkt. 13 at 14–17. For example, in *Transcon. Ins. Co. v. Washington Pub. Utilities Districts' Util. Sys.*, 111 Wn.2d 452 (1988), the court stated that "if there is ambiguity arising because of the ***difference of language*** used in the endorsement and the body of the policy, or between two endorsements, ***the language of the contract*** is construed most strongly against the insurer." *Id.* at 462 (citing 1 G. Couch, *Cyclopedia of Insurance Law* at 404 (2d rev. ed. 1984)) (emphasis added). Courts are concerned with the difference in language that create ambiguities and not the organization of the provisions or exclusions. This is not to say that a contract could never be so unorganized as to create confusion, but in this case, the Court simply finds that Tidewater has failed to show that the organization of this contract creates an ambiguity.

Similarly, in *Nichols v. CNA Ins. Companies*, 57 Wn. App. 397 (1990), the court found that an ambiguity existed because the language did "not make clear to the average insurance purchaser the exact extent of the policy coverage." *Id.* at 401. Here, the Court finds that an average purchaser would read "all Insuring Clauses" to mean every provision of the contract that provides coverage. There is no other reasonable

interpretation regardless of how the original exclusions are organized.  Therefore, the Court finds that Westchester has met its burden to establish that the exclusion limits coverage for Tidewater's loss to the coverage provided in the supplemental funds transfer endorsement.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Westchester's motion to dismiss, Dkt. 12, is **GRANTED**.

The Clerk shall enter a JUDGMENT and close the case.

Dated this 31st day of May, 2019.

_____
BENJAMIN H. SETTLE
United States District Judge